### MASON v. ROBISON et al.

(Supreme Court, General Term, First Department.    October 12, 1894.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE.

A finding that plaintiff had no interest with defendant in the contract sued on is not supported by the evidence, though such interest was positively denied by defendants on the trial, where it was constantly asserted by plaintiff, but was not denied by defendants before the action was brought, and was recognized in writings signed by defendant.

Appeal from judgment on report of referee.

Action by Lyman C. Mason against Willard F. Robison, individually and as trustee, David Robison, Jr., William Baker, John Cummings, James M. Ashley, William V. McCracken, Neil McDonald, and George A. Evans.  There was a judgment in favor of defendants, and plaintiff appeals.  Reversed.

Argued before VAN BRUNT, P. J., and FOLLETT and BARRETT, JJ.

J. E. Parsons, for appellant.
Wager Swayne, for respondents.

BARRETT, J.   The plaintiff sued to recover a fifth share of the profits resulting from a contract for building the roadway of a western railroad.   He claimed that the contract was made by the defendant Willard F. Robison in behalf and for the benefit of five persons, namely, David Robison, Jr., James M. Ashley, William Baker, John Cummings, and the plaintiff; and that David Robison, Jr., for himself and Ashley, was to have 40 per cent. of the profits, while each of the others, including the plaintiff, was to have 20 per cent.   The defendants claimed that the contract was made solely for the benefit of Robison, Jr., Baker, Cummings, and Ashley, and that Robison was to have 40 per cent. of the profits for himself, while Baker, Cummings, and Ashley were each to have 20 per cent.   In other words, the plaintiff claimed an interest of 20 per cent. in the contract, while the defendants contended that he had no interest whatever.   The learned referee found in favor of the defendants, and dismissed the case so far as the main contention was concerned.   After a careful review of the record, we think the learned referee erred in this conclusion.   The weight of evidence is overwhelmingly in favor of the plaintiff's claim.

The learned referee was probably governed solely by the oral testimony, which, upon its face, and so far as the mere number of witnesses is concerned, doubtless preponderated in the defendants' favor.   This preponderance, however, was not so great nor so sweeping as the respondents now claim.   It is true that Robison, Jr., and Cummings both deny the agreement to which the plaintiff testified.   Baker, however, was not equally positive, and his testimony amounted to little more than a want of recollection upon the subject.   The other defendants really knew nothing about the alleged agreement.   Ashley was not even present when it is said to have been made, and he did not see the plaintiff at the time.   But, even if there were, as the respondents contend, concurrent denials of the agreement by all the defendants, the weight of evidence would still be with the plaintiff, for there is documentary evidence clear and conclusive enough to outweigh either the denials or the treacherous memories of interested witnesses. The plaintiff proposed the scheme of the railroad in question.   He was, with the defendants Robison, Jr., Baker, Ashley, and Cummings, one of the original incorporators.   He devoted himself diligently and faithfully to the success of the enterprise, having charge of important matters at the west end of the line, while Robison, Jr., attended to the east end.   The voluminous correspondence between him and Robison, Jr., outlines the extent and character of his duties, and forcibly indicates that he was one of the parties in interest.   In one of the letters Robison, Jr., speaks of him as "one of us, and interested in the construction of the road."   He made personal advances to assist the enterprise.   He also induced the bank of which he was vice president to make large advances.   He indorsed paper for the purpose of raising money at another bank.   He made efforts to obtain subscriptions, aid notes, and rights of way.   He was urged to push the enterprise.   He was in constant communication with Robison, Jr.   In brief, he rendered such continuous and important services as to exclude any other rational conclusion save that of deep personal interest.   The suggestion that he did all this as a public-spirited citizen of the town which was to be benefited by the railroad, and because his real estate in that town might be enhanced in value by the enterprise, is far-fetched and puerile.   His acts throughout, and the corresponding acts of the other parties with relation to him and to what he was doing, plainly indicate that he was, as Robison, Jr., said, "one of them."   But the case does not rest upon the extreme probabilities which the correspondence and the acts of the parties evince, for we find a direct recognition of the plaintiff's interest in two important documents.   The construction contract was between the railroad and a firm named McCracken & Co.   At first it was intended that Cummings should act as representative for the parties in interest, but subsequently Willard F. Robison's name was substituted.   Before this was done, Robison, Jr., the plaintiff, and Baker signed a guaranty to McCracken & Co. of any contract Cummings might make with

them. Upon the same day the following agreement was entered into by the plaintiff and Baker, Robison, Jr., and Cummings:

This memorandum of agreement witnesseth that, whereas, John Cummings, of Toledo, proposes to take a contract from the Toledo, Saginaw and Muskegon Railway Company to build their line of road from Muskegon to Ashley in Michigan: Now, in consideration of his entering into said contract, and of one dollar to us paid, we, the undersigned, agree to share with said Cummings in any loss that may be sustained in carrying out said contract, if any, and will each pay, as fast as may be necessary to cover such losses, in proportion to our several interests in such contract.

Toledo, Ohio, Sept. 14, 1886.

William Baker.
David Robison, Jr.
L. G. Mason.
John Cummings.

This paper would seem to be conclusive. The learned referee refers to it in his opinion, admitting that "the plaintiff must have then thought that he had some interest." But all the signers must have thought likewise. We think it a more reasonable conclusion that the plaintiff then knew that he had some interest, and that all the parties knew likewise. Why, otherwise, should the plaintiff bind himself at all? And why else should he in terms bind himself "in proportion" to his interest in such contract. The defendants fully appreciate the significance, and, if unexplained, the conclusiveness, of this document; for they attempt to explain it by the suggestion that, although Mason then had no interest, he was intending to buy Ashley's interest. But this is a shallow pretense. The agreement plainly speaks in the present, and of proportions relating to existing interests. The still more conclusive answer, however, to this attempted explanation is that Ashley had not offered his interest for sale at the time when the agreement was signed, nor did he do so until long afterwards. We have closely scrutinized the evidence on this head, and we think it fully bears out the plaintiff's contention as to the time when first there was any question of the purchase of Ashley's interest. The second document is even more specific. In March, 1887, the plaintiff and Robison, Jr., had a conference at Grand Rapids. At that conference the following paper was prepared:

Grand Rapids, March 28, 1887.

| Robison, 40 per cent. | | | Cummings, 20 per cent. |
|---|---|---|---|
| Baker, 20 per cent. | | | Mason, 20 per cent. |
| Counting Ashley out. | | | |
| G, | 25,000 | | 2,333, Greenville. |
| S, | 7,400 | Money | 8,000, Sheridan. |
| A, | 7,500 | | 2,500, Ashley. |
| | | | 25,000, Carson City. |
| | 39,900 | | 37,833 |
| | 37,833 | | 40 1-2 miles |
| | 77,733 | | |

The lines containing figures here are in Robison's handwriting. The rest is in the plaintiff's. Upon the trial Robison claimed that he did not see that part of the paper which related to the percentages at the time, nor until long afterwards. It appeared, how-

ever, that in April, 1892, the same paper was produced upon the trial of another controversy, and that Robison then testified that he thought Mason wrote his part of it in his presence, and that he certainly knew about it at the time. "There is no question about that," he added. In addition to all this, when the plaintiff finally asked for a settlement, claiming his interest, Robison refused, not upon the ground that he had no such interest, but because, as he said, the plaintiff "would stand a very poor chance in a court of justice, as he had just got a fee for selling his partners out to the Grand Trunk Railroad." Still later, when the plaintiff wrote to the three parties—Robison, Jr., Baker, and Cummings —expressing a desire to meet Robison in New York, and saying, "I desire to have our deal with the T. S. & M. R. settled up as speedily as possible," he received a reply from Robison, containing no denial of a deal, but simply saying that it would not be convenient for him to go to New York City. And upon his cross-examination Robison was asked the following question, and gave the following answer: "Q. Why did you not write to him fairly and squarely, then, what you would have us now believe, that he was demanding an interest, and he was not entitled to any interest? A. I cannot tell you why." We need not pursue this subject further. In our judgment, the fact contended for by the plaintiff was overwhelmingly established. It follows that the judgment appealed from should be reversed, and a new trial had before another referee, to be appointed by the court, with costs to the appellant to abide the event. All concur.